R. S. SIMPSON, ADM'R, v. FANNIE GREGG ET ALS.

(Case No. 3232.)

1. COMMUNITY PROPERTY — PARTNERSHIP.— The death of the wife vests in her heirs, at once, her interest in community property, but does not dissolve a partnership of which her husband is a member, in a business in which the community property is invested; and if the firm continue to hold and use the community property, they are liable to the wife's heirs for the hire and rents of the property to the extent of the interest of such heirs therein; but the firm being called to account to the heirs for the use of the property, they are entitled to all legal and equitable offsets and credits.

2. HOMESTEAD — PARTNERSHIP — PARENT ·AND CHILD — ACCOUNT.— Where a father, who is a member of a firm, has no estate or income outside of partnership property, the firm cannot be charged with the maintenance or education of his children, and the firm, as trustees of the children's property, would be justified in making an allowance sufficient for their proper support and education, and to be credited with such allowance on a settlement of the trust estate. The father, if he so elects, may hold and claim his homestead interest in the firm property, and the firm would not be chargeable with rents to that extent in a settlement with the heirs of the mother, but in such event the father would be bound to support his children, and the firm could not claim a credit for money spent for such children's education and support.

APPEAL from Burleson. Tried below before the Hon. A. S. Broaddus.

Appellees, as children and heirs of Amanda Grant, sued the administrators of W. F. & J. F. Grant, alleging that their mother was the wife of J. F. Grant. That she died October 25, 1855; that no administration was had on her estate. At her death, and for a long time before, W. F. & J. F. Grant were partners in farming and stock-raising under the firm name of W. F. & J. F. Grant. As such partners they owned and cultivated three hundred and afterward four hundred and sixty acres of land, and owned and used in such cultivation five slaves, all acquired during the subsistence of the marriage between J. F. and Amanda; and appellees, in right of their mother, became the owners of one-half of J. F.'s interest, or one-fourth of such land and slaves, upon the death of their mother. That their mother had

three slaves, her separate property, which descended to appellees, subject to their father's life estate to one-third in them. Appellees further allege that said firm cultivated said land and appropriated the profits thereof, from the death of said Amanda, October 25, 1855, till the death of W. F. Grant, November, 1871, and likewise the hire of the slaves. And J. F. Grant, as surviving partner, did the same till his death, July 13, 1872. In exhibit to petition, the rent is charged to October 25, 1871, and hire of slaves to 25th of October, 1865, with annual interest added to both at eight per cent., making the sum claimed $19,760. Appellees say their claim was presented to the representative of each estate February 12, 1873, and rejected by W. F.'s administrator, and not accepted by J. F.'s. They sue April 12, 1873.

There was no defense for the estate of J. F. Grant. Simpson, administrator of W. F. Grant, demurred generally to the petition, and specially excepted the statute of limitations. The statute was also pleaded. To which plea it is replied that plaintiff W. F. Grant, Jr., was born April 1, 1848, and plaintiff Fannie Gregg February 14, 1850, and married in 1866; marriage still subsisting.

Simpson also pleaded that J. F. Grant was a joint owner with appellees of the land and slaves, and lawfully in possession in that character, with the right to use and collect rents and hire as against W. F. Grant. That he placed the interest he so controlled as joint owner or coparcener, in the firm, against similar amounts so placed by W. F. Grant, and in that manner he was paid by W. F. Grant for both the rents and hire, as far as the same were a charge against W. F. So W. F., having once paid such charge to one entitled to collect it, is no more chargeable with it. And further, that all the property in which Amanda had a community interest was partnership property at the time of her death; had been purchased with funds of the firm for firm purposes. So whatever interest she took was subject to the rights of the firm. That the firm debts must be extinguished before Amanda or her children could have any rights in the assets of the firm. But the assets were insufficient to pay

the firm liabilities, and appellees could take nothing. Simpson also pleaded that J. F. Grant was to the time of his death the head of a family, occupying the land in question as a homestead, having no other, and using it for the benefit of appellees, his minor children, and was not, therefore, answerable to his children for the rents. He also pleaded amounts spent by the firm in education and maintenance of appellees. Value of improvements on land, of which appellees have their part in the partition of lands, and to all of which W. F. Grant contributed.

The court, after stating the plaintiffs' case as to the defenses, charged the general law of limitation of two years, and that in absence of testimony showing when letters of administration were granted, twelve months additional would be allowed, and if claim was presented within three years after March 30, 1870, and rejected, and that suit thereon had been brought, the claim would not be barred.

The constitutional provisions in constitution of 1869 were given.

As to defense of expenses of maintenance, etc., "a father is bound to educate and support his minor children, and cannot tax the cost thereof against the proceeds of their property in his hands."

"Where a parent or an uncle, or both, bestow an education or support upon children, or nephews and nieces, the law will not raise a presumption, as it would between strangers, that such expenses are to be reimbursed. And where the children, or nephews and nieces, are minors, the law conclusively presumes that such expenses were a gratuity bestowed upon them, and will not permit a recovery therefor, nor permit it to be set off against a debt due the minors from such parent and uncle."

"So that, even if you should believe from the evidence that the plaintiffs were educated and supported while they were minors by their father and uncle, these last could not charge up the expense of such education and maintenance against them, nor set it off against any indebtedness on their part to the plaintiffs."

. . . "That it was no defense to the estate of W. F. Grant against such claim that he considered or dealt with the property as if it belonged to J. F. Grant (father of plaintiffs). He was bound to account to the real owners for the rents and hire."

"In reference to the defense against rents, based on the ground of J. F. Grant's alleged right to a homestead of two hundred acres, including improvements, you are instructed that under the pleadings and proof the defendant Simpson is not entitled to set up such defense."

. . . "In reference to the claim for value of improvements put by the said W. F. and J. F. Grant upon the common lands of the plaintiffs and themselves, by which it is said that the lands subsequently decreed to plaintiffs were enhanced in value, you are instructed: (1) If such improvements were made with money or property, or its proceeds, in which the plaintiffs had an interest, and that their interest in such money and property, unaccounted for by the Grants and not sued for in this suit, equaled or exceeded the enhanced value of their share of the lands by reason of such improvements, then the defendants are not entitled to any deduction on that account. (2) A trustee is held to the strictest liability in his dealings with the parties for whom he holds, and the burden of proving all the facts on which his right depends, and of excluding every reasonable hypothesis to the contrary, is thrown upon him and those claiming under him."

(3) "So that, if, under the rules already laid down, W. F. and J. F. Grant were trustees for the plaintiffs, the presumptions will be against them in their dealings with the trust property, and they, and those who represent them in this suit, are put to the burden of proving beyond any reasonable doubt that the property was improved with their own money, and that the plaintiffs had no interest in it; and, in the absence of such convincing proof, you will find, as to this issue, against the defendants."

The jury were allowed to find a parol purchase, during the life-time of their mother, of thirty acres of the land,

rents of which were claimed, defendants having exhibited a deed therefor bearing date to the firm in 1859.

There was a verdict against both the estate of J. F. Grant, father of plaintiffs, and against Simpson, administrator of the estate of W. F. Grant, uncle of plaintiffs, for $11,063.33 and costs. Judgment was rendered establishing the claim against both estates, to be paid by the administrator thereof in due course of administration.

Motion for new trial was overruled, and Simpson appealed. The plaintiffs, by motion, asked that the claim be ranked as of sixth class, which being refused, they also appeal.

The father of plaintiffs was married to their mother in 1846. From that time to the death of W. F. Grant, in 1871, W. F. and J. F. Grant were universal partners, engaged principally in planting and stock-raising. Neither of them owned anything outside the firm. Negroes and land were all purchased and owned in common. Each partner put into the partnership the interest he controlled in the lands and slaves, and they shared the proceeds between them. Everything that either had, no matter how acquired or held, was transferred to the firm, and was always treated by them as the property, not of the individual members of the firm, but as the property of the firm. All lands and slaves owned by them were purchased with partnership funds, and held for partnership purposes in their firm name. The mother of plaintiffs died in 1855, the owner of three negroes, her separate property, and of a community interest in lands acquired by the Grants as before stated. After her death the negroes and lands were used in the firm as before. There were fifteen to twenty negroes, a cotton and corn crop, twenty mules, and some farming implements, when she died. Subsequent to her death, the Grants placed from $4,000 to $6,000 of improvements on the land, which remain there. Plaintiffs were reared and educated out of the means of the firm, at great expense. J. F. Grant, being the head of a family, made his home on the land in question, and had no other homestead. There was not sufficient assets to pay the liabilities of the firm.

*J. D. Thomas,* for appellant.

*Sayles & Bassett,* for appellees.

A. S. Walker, J.— The assignments of error are sufficient to raise the correctness of the rulings and charges of the judge below (1) upon the extent of the liability of the estate of W. F. Grant to plaintiffs; (2) the right of the defendants to offset the expenses of maintenance and education of the plaintiffs, so far as paid from the property of the estate; (3) the effect of the homestead rights of the father (J. F. Grant) of plaintiffs upon the land as affecting a suit for the rents of the same land, and against W. F. Grant's estate; (4) the right to compensation for improvements made during the term for which rents, etc., were claimed, and upon the lands received in partition by plaintiffs; (5) limitation; (6) admitting parol evidence of date of purchase of lands, etc.

It will not be attempted to do more than announce the points held in deciding the case.

1. It is admitted in the pleadings, and in the testimony, that the property of the plaintiffs was in fact held by the firm, or partnership, composed of W. F. & J. F. Grant. While the effect of the wife's death upon the *community property* is to vest at once in her heirs the legal estate to the extent of her interest, such death, as between the original partners, would not dissolve the partnership. If the firm did, as alleged and proved, take and hold the property, the liability for hire and rents would follow. This liability would arise independent of the rights as between the members of the firm upon a settlement of the partnership.

2. If the firm by their acts in using the property became chargeable as trustees, then as such, when called to account, as in this suit, they should be allowed all legal and equitable offsets and credits. It appears that aside from the firm business, the father of the plaintiffs had no property whatever; no capital nor income. The firm as such cannot be chargeable with the maintenance or education of chil-

dren. There can be no relationship imposing such duty upon
the firm. A court would, however, enforce from the income,
or the property used by the firm as trustees, an allowance
sufficient for their proper support and education. As by the
facts alleged and proven in this case, an allowance could
come from no other source, the firm could apply the income
to that purpose.

"What the court will allow upon suit may be done by the
trustee without suit." Perry on Trusts, sec. 715. "So, also,
any disbursements which the court would order the trustee
to make will be allowed to the trustee if he makes them
without an order." . . . "So trustees may expend
moneys for the support of an infant, if the court shall sub-
sequently approve of the expenditure" (as reasonable, etc.).

We therefore consider the court in error in refusing the
right to defendants to offset the necessary expenses, etc., of
the plaintiffs while minors. They had drawn such support
from the firm; they should not be allowed to take it in their
education and have judgment for it. Spending it once,
upon the court being satisfied that such expenditure was
reasonable in amount, and proper in kind, it should be
approved.

3. So also of the improvements. In civil cases there is no
rule of law imposing such burdens upon litigants, as are by
the charges upon this subject, as given by the court, imposed
upon the defendants, to establish the facts alleged with refer-
ence to the improvements.

4. As to the homestead rights, the case is so presented that
it is not clear that any error could result from the rule given
by the court in the charge.

While it may result that actual homestead rights would
be created and protected by *the acts of the parties* as given,
still the pleadings make the case for decision, and we can-
not look beyond them. While the constitution and laws
apply to the residence of a family upon lands in which the
head of the family has an estate in fee, whether as tenant
in common or in severalty, the character of homestead, and

afford it protection when attacked by creditors, still the head of the family may, in his dealing with others under the homestead laws, disregard that quality in his residence.

So, in this case, if the identity of the parties as owners of property, as heads of families, as fathers of children, has been lost, and such loss of identity recognized by all parties litigating, as shown by their pleadings, then it would follow that, in determining the rights of the parties, as minors, calling a partnership firm, occupying the enforced position of trustees, to account, the rights of each would be ascertained by allowing to each only what the law gives to parties occupying the characters and conditions so assumed and acknowledged. As a firm, the individuals could have no homestead rights, and the occupation by J. F. Grant of a part of the firm lands could not be charged in this suit against plaintiffs.

5. Under the facts as developed on the trial of the case, the two years' limitation had not run at the filing of the suit. It is held that, it not appearing when letters were granted, that one year additional was added to the time of the statute after the death of W. F. Grant, and that the presentation within that time, and suit followed within ninety days, would be within the limitation.

It is not, therefore, necessary to notice the effect of the constitutional exemptions in favor of minors and married women.

6. There was no error in allowing parol evidence of the date of the acquisition of the thirty acres, Benner tract. The subsequently executed deed would relate to the equitable acquisition, if such equity was shown.

7. We are inclined to think that the law, applied to the facts, would fix a homestead of two hundred acres on the firm lands, rent of which ought not to have been allowed as against W. F. Grant's estate. In such event, however, the obligation of the father for the support of his children would become active, and no offset should be allowed against any just claim of the plaintiffs for such support.

8. It is not necessary to act upon the question of classifying the claim.

For the errors indicated, the judgment should be reversed.